Your Honor, Attorney Scott Hubbard, representing Appellant Jerry Doran. With me is Attorney Lynn Hubbard. I'm sorry. I called him the wrong name. I pronounced it wrong. I said Duran, but it's Doran. It's whatever you want, Your Honor. No, no. It's whatever he says it is. Fair enough. That's what we do. Well, fair enough. I was taught not to contradict. No, you can correct us when we're wrong. It's so rare, you wouldn't get to do it often. Now you're throwing me off my track. With me is Attorney Lynn Hubbard and Attorney Steve Wedel, both for trial counsel. I know the Court's familiar with the briefs and the issues, so unless the Court has any specific questions for the appellants, I was going to turn the podium over to my father, who would like to make a brief few-minute statement about the status of the trenches, so to speak. It's fine. Thank you. Your Honor, I always referred to Mr. Duran as Mr. Duran, so Lynn Hubbard on behalf of the appellant. I was thinking on the way over here today that out of all the arguments I've made to the jury and to the bench, why my best arguments have usually come in my car on the way back to my house. And I'd point out that in the trenches, they usually have young warriors while the old guys stay in the office and make sure nobody steals their desk. But in my office, it's just the opposite. So I was trying to think of how I could come up with a hypothetical situation or scenario that would clearly illustrate why the Court would not want to adopt such a narrow version of Pickering. It'll take me about three to four minutes to explain why not, and then I'll sit down or answer specific questions and reserve the rest of the time. Scenario number one comes up when my disabled client decides they want to go to a restaurant. And this is hypothetical. They want to go to a restaurant, but there's no curb cut. Can you hear all right, Judge Gould? Yes. All right. Thank you. Go ahead. And there's no curb cut, and there's no ramp. So lawsuit number one happens, and they get a curb cut or they get a ramp. Then my client, disabled client, gets to the front door of the restaurant, and there's not sufficient strike side clearance, so my client can put their hand on the left side and get the door open without getting hit by the door. So here comes lawsuit number two, and my disabled client prevails. Lawsuit number three comes when they get inside, and they're set out of the way. Their name's called, but they can't get by the meter D section station because it's right in the middle of the accessible route and it's too narrow. The fourth thing that happens is after they've prevailed on lawsuit number three, they finally get to their table, and lo and behold, here's this big round base underneath the table that their tiny wheels in the front of their wheelchair will not allow them to get within 15 inches of the table. So here comes lawsuit number four. Now, this wasn't my illustration. I didn't think this up. Retired Judge Peter Nowinski did up in the Eastern District, and he gave it one day in open court, and that's when I picked it up. Here comes the second scenario. My client, disabled client, goes out to dinner at this restaurant with three robust friends. There's no curb cut, but the friends bounce them up, get my disabled client onto the sidewalk. They get over to the same front door. The friends open the door for them. They wait until their name's called. The Mater D Station's in the way. My friends, my disabled client's friends, move the Mater D Station so my disabled client can get to the table. Once my disabled client gets to the table, it has that same big round base holding up the table, so when my client gets to do a perpendicular approach, turn to the left, eat, can look at two of the people that my client went to dinner with but can't see the one that's behind her back. Now, that's the first lawsuit. My client's deposition gets taken and alludes to these four barriers. And six months down the road, our expert gets out there, as in Pickering, which was 15 months before the expert got out there. The expert gets out there, documents these four barriers our client complained of, but also said, look, there's no accessible route to the restroom. The tables are configured such that when people are in them, you can't get to the restroom. And when you get to the restroom, the door is too small. And when you go inside, the pipes aren't wrapped, so you've got the problem with burning your knees. The water faucets require pinching, twisting, and grasping. They're not accessible. The mirror's too high to accommodate any disabled person. The paper towel dispenser's too high. The soap's too far to reach. When you get in the water closet stall, it swings out, but there's no automatic device to close it behind them. There's no handle to grab ahold of. You know, I don't want to limit your two or three minutes that you said you needed to explain your point, but I think what your opponent is going to tell us is your client's limited to what he has experienced or is likely to experience, but he has to somehow be involved. He can't be the plaintiff in all the cases.  The best plaintiff is the plaintiff who's been injured by what is there, what isn't there. So what you want to do, I think, is to anticipate what her argument's going to be and then tell us right now why she's wrong, and you'll be a leg up when she gets here. Okay. Well, here comes the second lawsuit after the expert. Here comes a summary judgment motion now saying, look, we fixed the ramp, but they really didn't because they put a ramp out in the access aisle. We fixed the door, but they really didn't because now the door takes 20 pounds of pressure to open. We moved the Mater D station, which they did, but they took the disabled seating spot away, and we changed the table, which they did, but now they put in a table that's just as bad or worse because there's less knee clearance, less height. So the point I'm trying to make is the court says, well, I guess they addressed all those issues that were in your complaint, and we're going to go ahead and rule in their favor on summary judgment. Now, the reason that that interpretation of Pickering shouldn't be so narrow is it makes for piecemeal litigation. We have to keep filing more lawsuits involving the same plan. Isn't all litigation under the ADA piecemeal? If I go outside and I'm disabled and I say there are problems in this building, I don't know what they are, but there are problems in there, and I'm bringing a lawsuit against it. All right? I send in an expert six months later and say, find all the problems. And he finds all kinds of problems. Do I get to go ahead with my lawsuit? You should be allowed to go ahead with all problems that are specific to your disability after you've encountered the first hearing. Well, how about the other disabled people? That's not very efficient at all. It really is. It's not efficient because there are people with other disabilities, aren't there? True. Okay. So the only efficient way to do it is to redo the building entirely. I don't think that's efficient. Well, you may not think it's efficient, but some people may. Why would we want to take four, three lawsuits involving the same plaintiff, the same defendant, the same barriers and have to file them and then have them related by a district court judge? And sometimes they relate them and sometimes they don't. And we start all over again because the district court, their calendar doesn't need all this litigation. That I'm well aware of. And then certainly the court system doesn't need all this litigation either. If we could do it in one case, it would be more expeditious because we get the same motions on every case. So when you file it and relate it, bam, then we get the same motions all over again. And we're no closer to getting accessibility for the disabled community. I think we understand your position. Okay. And I guess now that I think about it, here's the property owner. He spends $100,000 and feels he's won the first case on summary judgment because we couldn't introduce the rest of this information, that it was all done wrong. And then he knows when he gets lawsuits number two and three that the disabled community is picking on him. Disabled community doesn't get access. I don't know that anybody profits from that. Anyway. Counsel, I have a question for you, please. Does the Eighth Circuit opinion in Steger say that once a disabled person shows actual injury by encountering a barrier or being deterred from using the facility, that then they get to bring out any problems that relate to their disability? That's what Steger stands for, and that's what this court found in Pickering v. Quality Foods. And that's what we're asking. Are there any other circuit authorities? Pickering is somewhat ambiguous because it gives you a green light if you know of some problem and it deters you. But it doesn't really address the situation here, does it? Your Honor, if it please the Court, I'd like my son, Scott, to answer that question. Forgive me, Your Honor. I actually thought Steve Wedel would have been the better choice for this question simply because he was there. But I am familiar with the facts in Pickering, too. First off, I'm aware of no other circuit court, aside from Steger and Pickering, to discuss the issue of the scope of injunctive relief with respect to once a disabled individual encounters one barrier, they're free to seek injunctive relief for all other cases or all other barriers that relate to their disability, which turns into Judge Duffy's question about why not one lawsuit that deals with all of the barriers, all of the barriers that affect all of the disabled individuals. So in the case of Mr. Dorn, who is neither visually impaired nor hearing impaired, why not simply bring a lawsuit and let him correct all the ADAG violations? There is a well-grounded and well-thought-out rule in the Ninth Circuit that you must suffer the injury itself. That ensures, for example, that the tobacco companies don't bring a lawsuit on secondhand smoke, alleging damages from secondhand smoke. You want to know that the person who is bringing the lawsuit has a personal interest in seeing that it is brought to a successful conclusion. Now, with respect to Mr. Dorn serving as a private attorney general, you know that with the injuries that he suffered, that other disabled individuals with the same disability will suffer the same injuries, even if he hasn't personally encountered them. It's the futile, it's the threat of future discrimination. Now, courts have spoken that they don't want, once one barrier is encountered, a disabled individual shouldn't have to go back and re-encounter, basically take heroic measures to re-suffering the same injury, which is, I believe, with a distinction between Pickering and Steger, but it's a false distinction. In Steger, the individual continued to return. In the case of Pickering, Mr. Dorn didn't. So I believe the rule applies equal force with both parties. With respect to the injury that you referenced, Judge Harris, and we have eight minutes left, with respect to the injury that was suffered, you're right. The best plaintiffs are the ones who are injured. But the injury that Mr. Dorn suffers with respect to the removal of architectural barriers is the defendant's failure to make the facility readily accessible and usable by the disabled. You know, Mr. Hubbard, it might help before she gets up, since you've got time, and I know you want to say further rebuttal, but it might help if you tell us what you see precisely as a narrow issue that's before the Court on this record for decision. I suspect that the narrowest issue before the Court — It doesn't have to be the narrowest. Fair enough. I believe the narrow issue before the Court is whether or not Pickering — well, one would argue, assuming that the Pickering maintains the same opinion that the appellant's — assuming Pickering's interpretation is accurate, according to the plaintiff's appellant, then the narrow issue would be, should the plaintiffs have the opportunity to conduct discovery of unknown and unencountered barriers, and standing to remove those barriers once discovered. And you're framing that after the plaintiff has already shown some barrier they encountered. Forgive me, Judge. Could you please rephrase the statement? I don't follow you. Yeah. Well, as you frame the issue, is it necessary that the plaintiff has encountered one barrier before they challenge other barriers they didn't know about? Yes, Your Honor. It is. That's the gatekeeper to ensure that you don't have a disabled plaintiff who lives in the Trump Tower, which he's never visited nor has any plans to. Now, there is one exception to this rule that's not at issue in this case, and that involves new construction. It involves a deal struck by — in Congress where if you have — if you — if you think you're about to be discriminated against in the new construction of a facility, then you can bring a lawsuit. You don't have to wait for the facility to be built. And actually, you don't have to — once the facility is built, if you know that it's built incorrectly, you can bring a lawsuit. But that's the one exception. Thank you. Thank you.  Good morning, and may it please the Court. My name is Melinda Evans, and I represent the defendant in Appalease 711 in Southland Corp. Now, we talked about how narrow the issues are in this particular case. And I think while we have some very interesting and important issues of standing that come up in this case, I think we should keep in mind that at the end of the day, under the facts of this particular case and history of litigation, the judgment here should be affirmed regardless of whether the district court was right when it ruled that plaintiff's standing was limited to just those barriers that the plaintiff either had encountered or actually knew about. Because here, let's look at the barriers that were alleged. We can — we can group them according to how they were raised, that there was an expert report in the complaint and in the First Amendment complaint that asserted the various barriers existed under State law or under the ADA. And then as the case proceeded and there were expert reports prepared, rebuttal reports that joined inspection, there were additional barriers that were identified by the plaintiff's expert. Now, there's a small third sort of grouping of potential barriers here that were some — just a couple of barriers that the plaintiff's expert identified after discovery had closed, after the expert reports had been submitted, after rebuttal reports had been submitted, and after that closing of discovery in a declaration on summary judgment, the plaintiff's expert raised a couple of additional issues. Now, from this evidence that was submitted on summary judgment and through the concessions that were made by the plaintiffs on summary judgment, all of the barriers, whether the plaintiff actually knew about them, had encountered them or not, all of the barriers that were in the complaint or in the expert report were resolved, with one exception. They took issue with the width of the — of the aisles in the store. Now, the only other — Well, it took issue with what was stated as the width of the aisles. The width of the aisles didn't change. Exactly. It was stated at one — one width, and in fact, it was a different, and that's — that's a fact. But what we have to look at, we're reviewing the grant of summary judgment. We want to see everything that was before the Court, and then we have to decide. But we need no more than what was before the Court at the time it granted the — the motion for summary judgment. Now, as I understand their position, that's all right. You look at this, but you have to consider that if he had known these other things, he might have included them in his lawsuit. And I think he's saying, Pickering says, that's all right. And we have to look, I think, as legal NC, does Pickering say that's all right? Well, maybe the pertinent fact here is to point out that what happened in this case was that even though the magistrate judge and the district court said that the inspection of the property should be limited to just those barriers that the plaintiff either encountered or knew about, despite those rulings, the plaintiff and the plaintiff's expert actually inspected the entire property, all the areas of the property that were open to the public. They inspected those, and they included all of those areas in their report. So what's the bottom line from your perspective, Ms. Evitz? From — This Court should rule what? Definitely affirm the judgment, because, I mean, I'm surprised that this was appealed, even though the standing issues are coming up. You should affirm the judgment in that. Go ahead and finish the sentence. The case was properly dismissed. The ADA claims were moot, and that was the only basis for Federal jurisdiction. Then the Court properly decided that it could decline to exercise supplemental jurisdiction over the State law claims. So the case was dismissed, and that judgment should be affirmed. But wasn't — didn't the district court say there was no standing to raise other barriers that he had not encountered or didn't know about, even after he had raised some? So isn't the district court's decision contrary to the Eighth Circuit's rule in Stager, or do you contend it's not? I think Stager has problems because — We have to address standing first before we get to your other merits arguments. I understand. And my point was simply that, regardless of how we come down on standing, the facts of this case show that the dismissal is contrary. But let's focus on standing. That's fine. Because as I said, I think we have to decide that before we get to another issue. Yes. And I understand and I agree that standing is a threshold issue in any Federal case. And it is so because — Okay. So just tell me, do you disagree that under the Eighth Circuit's rule there would have been standing for these other claims? Under the Eighth Circuit rule, I think the Eighth Circuit would have allowed this plaintiff to submit evidence of any barriers, even if he did not know about them, as long as those barriers were related to his disability. Okay. Then give me your best argument as to why we should not adopt the Eighth Circuit's rule. Well, I don't think that this Circuit's precedent in Pickering is consistent with Stager. But, I mean, there are good reasons for that. I think that Stager went too far. There is a strong dissent in Stager, and I agree with that dissent, that the reason why standing is a threshold issue whenever we have a Federal case is because Article 3 of the Constitution limits the jurisdiction of Federal courts to only those actual cases and controversies. And the United States Supreme Court has repeatedly reminded us, even in a case involving remedial efforts such as an injunction with the Clean Water Act or with civil rights, repeatedly reminded us that standing is not dispensed in gross. I completely disagree with the Stager court's finding that is, in effect, as long as you can get your toe in the door, then that opens up an arena for the Federal courts to hear claims based on anything that was there in that building. Now, that's completely contrary. Wait, wait, wait. First of all, they don't say anything. They say anything relating to that person's disability. Right, and maybe... So they wouldn't let the person in the wheelchair raise problems of a different kind of disability. But they're saying any other barriers to the wheelchair person could be raised. So, I mean, why is that totally irrational? I mean, there has to be Article 3 standing, but that seems to be made out once one barrier is encountered. So why would we require a litigant to bring a series of lawsuits before they could actually use the facility? The answer might be that we are reviewing the case that was tried. Isn't that what we're reviewing? We are reviewing... A summary judgment was introduced on the case that was brought. And that's the case we're reviewing. I agree. And with the facts of this case, we should note that here the plaintiff did try to assert, repeatedly tried to assert barriers that were completely unrelated to his disability, trying to correct things such as claiming that there needed to be signs in Braille, even though he's not claiming that he has any impairment of his vision, or claiming that there needs to be correction of signage for the hearing impaired, even though that, again, is not his disability. I mean, standing came up because on the face of the barriers that he was claiming was obviously unrelated to his particular disability. But then even beyond that, when we talk about piecemeal litigation and the facts of this case, let's look at the fact that, I mean, even the barriers that were raised by the plaintiff's expert in this case came in a piecemeal fashion. They weren't all asserted in the expert report in the complaint or the First Amendment complaint or even the expert's report or rebuttal report. I mean, they just kept coming. And as a practical matter, the fact is that ADA State law requirements, they're very technical and difficult. And there are a lot of good companies that are trying hard to comply with every little provision. And, I mean, it's easy to overlook something. It's easy even for the plaintiff's expert to overlook something and then to come back and say, no, wait, there's more. Now, the more important issue here that goes to standing, I believe, is the fact that the facts of this case are very different from Stager or even from Pickering, that here we have a plaintiff who concedes that he was in every publicly accessible area of the 7-Eleven store. He says that every time he went there, there was no part of the store that was closed off to him. So maybe we should talk about what this case is not. This is not a case where somebody in a wheelchair is unable to get through the door or the door to the restroom or some barrier, some literal barrier that prevents them from even finding out what's on the other side of that door. That is not the case here. This is not a case where the plaintiff was deterred from going back to the store or from entering or going into any part of that store. I mean, Mr. Doran said that he went into the store and he went there several times. Now, if he, if we believe his testimony and in deposition he said that he had been to this 7-Eleven between 10 and 20 times, I think he said later that he had been back to the store a few more times, if after all of those visits he still was not aware of some of these alleged barriers, then I think it's really a far stretch to claim that he is going to encounter those. Even if the barriers that are raised by the plaintiff's expert, whether or not those are actual ADA violations or even whether or not those are redressable ADA violations, since this was an old building, it's subject to the readily achievable requirements. Putting all of that aside, even if these were actionable ADA violations, there is no indication that he has encountered or been made aware of these supposed barriers at any time in his previous visits to the store. Now, that's where I get into a problem with the fundamental notion of standing in the jurisdiction of Federal courts. I mean, like we've said, Federal courts already have plenty of litigation. I don't think we need to create litigation or issues to litigate. And here, even under the fundamental premises of Article III standing, there needs to be that injury in fact, but there also needs to be a causal connection between the injury that is claimed and the conduct that is being challenged. And I think we lose that here, too. If we have a plaintiff who is going back to the same store again and again and again, still has never even heard of some of these barriers, is completely unaware of them, does not claim to have ever encountered them, I don't see any causal connection between that barrier, if it exists, and the injury that he is claiming. Breyer, as evidence, how would you define the question that's before the Court for decision today? How I would define it would be I cannot step away from the facts of this case. And the fact is, all of the ADA claims were admitted. As evidence, how would you define the question that is before the Court today? I would define the question as, primarily, did the Court correctly find that the ADA claim was moot based on the evidence that was before the Court? I mean, that's the principal issue. If we then want to get into issues of standing, then did the Court correctly ---- You can make any argument you want. I asked you for the question, and I guess you've answered that, haven't you? Yes, I have. All right. Now, go ahead if you have something else you want to tell me. Just ---- I have one question for you, counsel. Did the expert identify any wheelchair barriers, not things like Braille, not things relating to other disabilities, but did the expert identify barriers in a wheelchair which the Court couldn't be considered? That the Court could not consider? Did the expert identify wheelchair barriers that the Court ruled should not be addressed? Yes. Okay. What were those barriers? Well, I mean, some of those barriers were things that were not deemed admissible expert opinion testimony because they had not been included in the expert report. Let's put discovery issues to the side. I just want to know what the barriers were. Bear with me. Because we're not dealing with this case on a motion or on an order, like giving a sanction or discovery or failure to amend. We're just dealing with the rulings of the Court. Thank you. Judge Gould, I'm sorry. I'm not finding this very quickly. I need to ---- Okay, well, then don't move. I'll go back to the record later. I was under the impression that the expert identified several problems that would affect Mr. Doran in a wheelchair, which the Court ruled he couldn't raise because he wasn't aware of. The Court did rule that, but the evidence still submitted by 7-11 showed that these barriers had been remedied. The claims were moved. And so the Court did address some of these issues by simply saying that it didn't need to rule on those issues because they were outside the realm of what the plaintiff had actually encountered or knew about. But still, the evidence submitted by 7-11 to oppose the summary judgment went through each barrier that was included in the expert report, regardless of whether the plaintiff had ever even heard of that barrier, and showed that it had all been corrected or that it was a requirement only under State law and that it was not a Federal  So that's why I say that all of those issues were rendered moot. And there really isn't anything to ---- there isn't really anything at issue, regardless of where we come down on standing, because those issues should have been decided in 7-11's favor, even if the Court had not found that standing was limited to what the plaintiff was at least aware of. Thank you. Now, as one final note, we've mentioned what this case is not about, and that it is not, as I said, an issue about like Stager where ---- I'm sorry, like Pickering, where the plaintiff, Mr. Doran, claimed to not know about various barriers because he didn't go in the store or in Stager. There were multiple plaintiffs, some of whom could not remember being in that building. They were found to have no standing at all. The one who did have standing was Mr. Birch in Stager. And you're right that the Eighth Circuit did say that he had standing because he had encountered barriers in the first floor restroom. But the issue in Stager was where somebody had ---- the plaintiff had chosen not to go into all of the areas of the store. And so there was a question of what he might encounter later on if he went back to the building. And again, this is not that kind of case. This is a plaintiff who has been into every publicly accessible area of the store multiple times and simply has not ever encountered these barriers. It's a classic example, then, of a plaintiff who does not have standing to claim the injury in fact that correlates to the correction that he is seeking. To allow this particular plaintiff, under the facts in this case, to seek an injunction for all barriers, even those he's never encountered, he's never even heard about, he has no issue with them, that would fly in the face of a ---- I mean, a basic law about who is entitled to an injunction and the scope of that injunction. I think this issue of the scope of an injunction has come up before the United States Supreme Court multiple times in multiple contexts. And, I mean, that remedy has to be limited to the injury that has been suffered. If we decide differently, which is, I think, what the Sager Court decided when the Eighth Circuit allowed correction of any barriers related to the plaintiff's disability, I think that really runs into a problem with established U.S. Supreme Court precedent that has carefully limited the jurisdiction of these Federal courts and carefully limited the injunctive relief that is available to plaintiffs, not only in an ADA context, but in any context. Any plaintiff that is seeking an injunction needs to meet those essential elements of standing for the injunctive relief that they are seeking. And just in closing, where I started, under the facts of this case, which I cannot ignore, I mean, here, this dismissal was proper under the evidence that was submitted. Regardless of whether the standing issue was corrected or not. Thank you for your argument. Thank you. We'll hear rebuttal. Hello again, Your Honor. Private Attorney Generals vindicate the highest priorities, or what Congress deemed to be the highest priority for the disabled. What was before the court at the MSJ? That is what you asked, Judge Ferris. Here's what was before the court. Doran was limited to barriers that he had actual knowledge of or actually encountered prior to filing the complaint. Even after his expert identified on page, Judge Gould, it's on page 31 of appellant's opening brief, are the list of barriers, five barriers that we were able to ascertain through a sub rosa basic plan, sub rosa inspection of the facility during the Rule 34 inspection and afterwards when their completion of their remodel was, when their remodel was completed. This case is before us on a grant of a motion for summary judgment on the theory that the complaints had been corrected and everything else was moot. Now, what was not corrected that was not moot? Page 31 of appellant's opening brief. The store's condiment counter requires a reach range of 48 inches. That violated both Federal and State law. The ATM machine is located 36 3 quarters inches above the floor. That also violates Federal and State law. The store's accessible parking spaces have a slope of 4.2, 3.0 and 2.2, which violates State and Federal law. I want to pause for a moment on this one. The defendant was complaining because barriers were trickling in. Well, you're in somewhat of a unique position because this is rebuttal. Ms. Evans is through. She isn't going to get to answer anything that you say now. That's true. So I hope you are bringing in, you can do what you want with the time that you've got, but I can assure you that the court is not going to consider things that outside of proper rebuttal, because we know Ms. Evans doesn't have a chance to rebut your new material. Fair enough, Judge. I was under the belief that she was asked pointed questions on the barriers that were present. Yes. And that's what you're answering, and I'm we're listening to that. Correct. So I will not go beyond her. All right. Go ahead. That being said, she also complained about barriers trickling in. Part of the problem of barriers trickling in was the court's ruling on discovery and at the MSJ that the expert report would only include, or the in-site inspection only. You said five and you listed three. What were the other two? The other two was posted an illegal tow-away signage. That's a violation of State law, but it does have policy implications for ADA. If someone cannot use a public accommodation because of violation of the law, then it's a policy violation. Well, excuse me, that's going to take more time and go into areas beyond the rebuttal. So my apologies. I can brief the issue further. The store's counter was 36 inches high. That also was a State law violation. Now, another problem with barriers trickling in is the fact that the defendants were doing, were making alterations. Dang it, that's beyond the scope of opposition, too. Go ahead. Fair enough. The defendant was made alterations to the facility in an effort to move us out of court. These alterations were done incorrect. Because the Court limited us to barriers that our client had actual knowledge of prior to filing the complaint and the alterations occurred after the complaint was filed, we had no way to introduce evidence showing that they had done the alterations incorrectly. So what, in your view, should be the bottom line of this Court's decision? I have to return to the question of discovery. If our interpretation of Steger and Pickering is correct, a disabled person should be able to discover the barriers that he did not encounter and did not actually have knowledge of in public areas which relate to his disability. When that occurs, then we can put him before the district court and have a proper ruling on the merits. Barriers trickling in, we don't want barriers trickling in. We want to get them all in a proper site inspection. Once all the alterations are complete where the defendant says, this isn't as good as we're going to get, and we say, fine. You know what's unique about these cases? And we're going to enter a ruling and we're going to try to make it clear enough so that neither side will be confused. But what happens, if you had a plaintiff in a regular case, forget about disability and forget all of this business, just a plaintiff in a regular case. And the plaintiff was struck by a car. And she brought an action against that car for what had happened to him. And then this and the answer showed conclusively that the car didn't cause the injuries about which the party complained. And a court entered whatever order it entered appropriately, granting summary judgment. And then the plaintiff says, yes, but there was ice on the sidewalk, there was ice on the street, I slipped and fell, and I'm still the plaintiff still may have the injuries, but we have to look to see as between the complaint that was made and the answer that was given, is there anything remaining to be argued? And the answer somebody might say is no. At least she says in this case the answer is no. And you say in this case the answer is yes. So we look and we'll see. Forgive me, and you're hypothetical. I'm over my time limit. Can I answer? Go ahead. Yes. I believe it's apples and orangutans, Judge. In the case that you suggested where there was a complaint filed and there was an answer on file, the opportunity to conduct discovery on the merits of the case would have given everyone a chance to present evidence regarding their positions. Now, if it's absolutely clear that on the merits, the defendant driving the car, the car was not the cause of the problem, then yes. Obviously, the defendant should go free and the disabled person, or excuse me, the injured person, we feel bad for you, but your relief does not lie with the driver of the car. The relief rides with God or whoever. Now, what this case says is that everything that was raised, every injury that was alleged, was met. And I gather you're saying it may have been met, but it wasn't sufficient or it wasn't appropriate. No, no, no, no, no, no. Not every injury was. We allege that the defendants failed to make their facility readily accessible to and usable by the disabled. That's a term of art that expands the wide, well, that Pickering and Steger discuss far better than I could, and I thank the Court for its time. Thank you. We appreciate the argument of counsel. The case just argued is submitted.
judges: Farris, Gould, Cff, Duffy